UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEO R. SCHUETTA,

          Plaintiff,

v.

AURORA NATIONAL LIFE
ASSURANCE COMPANY,

          Defendant.

Case No. 13-CV-1007-JPS

ORDER

The plaintiff, Leo Schuetta, initially filed his complaint in this case on July 30, 2013, in Racine County Circuit Court. (Docket #1). In it, he alleges various claims stemming from his allegations that the defendant, Aurora National Life Assurance Company ("Aurora"), failed to pay him amounts due and owing to him under an annuity contract. (Compl. ¶¶ 11–32). Aurora removed the case to this Court on diversity grounds, pursuant to 28 U.S.C. §§ 1332 and 1441(b).[1] Shortly after removing the case to this Court, Aurora moved to dismiss several counts contained therein pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket #3). That motion is now fully briefed (Docket #4, #18, #19), and the Court renders its decision on the matter.

1.     STANDARD ON MOTION TO DISMISS

In evaluating Aurora's motion to dismiss pursuant to Rule 12(b)(6), the Court must determine whether Mr. Schuetta has pled facts that show that his claim of relief is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550

---

[1] Jurisdiction is appropriate in this regard as the parties are citizens of different states (Mr. Schuetta is a citizen of Wisconsin, while Aurora is organized under California law and has its principal place of business in New York) (Notice of Removal at ¶ 4; Compl. at ¶ 1–2), and the amount in controversy exceeds $75,000.00 (Mr. Schuetta seeks damages of $100,172.52) (Notice of Removal at ¶ 5; Compl. ¶¶ 14, 19, 24, 28, 32). 28 U.S.C. § 1332.

U.S. 544, 562–63 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Court must accept Mr. Schuetta's well-pleaded facts as true and consider them in the light most favorable to Mr. Schuetta, and, doing so, must determine whether those facts plausibly suggest a right to relief that is more than speculative. *See, e.g., Twombly*, 550 U.S. at 562–63; *Iqbal*, 556 U.S. at 664; *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665 (7th Cir. 2013); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

2.   BACKGROUND

Mr. Schuetta's factual allegations are relatively straightforward.[2]

Prior to May of 1990, Mr. Schuetta worked for Dana Corporation at a manufacturing plant in Racine County, Wisconsin. (Compl. ¶ 3). During that time, Dana Corporation purchased annuity contracts from Aurora[3] for the benefit of its employees. (Compl. ¶ 4). As one of Dana Corporation's employees, Mr. Schuetta was named as a beneficiary under one of these contracts, and was accordingly entitled to receive a monthly annuity of $397.51 from Aurora after his retirement. (Compl. ¶ 5). Mr. Schuetta was also

---

[2] As discussed above, the Court must accept all well-pleaded facts as true and consider them in the light most favorable to Mr. Schuetta. The Court's background discussion proceeds under that understanding; none of its statements should be considered final findings of fact.

[3] In fact, Dana Corporation purchased the annuity contracts from Executive Life Insurance Company. (Compl. ¶ 4). Executive Life Insurance Company, however, was placed in conservation by the California Superior Court in 1991; in 1993, Aurora assumed all of Executive Life Insurance Company's contracts, including the one purchased by Dana Corporation for the benefit of Mr. Schuetta, under a rehabilitation plan approved by the California Superior Court (Compl. ¶ 5). Mr. Schuetta's claims, thus, lie against Aurora, and the Court will refer only to Aurora, as opposed to Executive Life, throughout the balance of the body of this order, for the sake of clarity.

the beneficiary of a separate $316.00 monthly pension benefit provided by Dana Corporation upon his retirement. (Compl. ¶ 6).

Mr. Schuetta retired in May of 1990. (Compl. ¶ 6). He thereafter began to receive his $316.00 per month pension benefit from Dana Corporation. (Compl. ¶ 6).

However, he did not ever begin receiving his $397.51 monthly annuity payment from Aurora. (Compl. ¶ 6). In fact, Mr. Schuetta did not seem to even be aware that he was entitled to receive the annuity payment. (*See* Compl. ¶¶ 6–7). This point is supported by the alleged fact that Mr. Schuetta received a letter from Aurora in September of 1990. (Compl. ¶ 16). Mr. Schuetta asserts that, when he received that letter, he believed it was sent in connection to his pension from Dana Corporation; he did not realize that the letter actually dealt with his annuity from Aurora. (Compl. ¶ 16). Under that incorrect impression, Mr. Schuetta called Aurora to inform them of several "mistakes" contained in the letter; of course, these "mistakes" were not actually mistakes, but were correct recitations of the terms of the annuity contract that did not comply with Mr. Schuetta's understanding of his pension benefit. (Compl. ¶ 16). When Mr. Schuetta called Aurora, Aurora's representatives told him to write his corrections on the letter and return it to them. (Compl. ¶ 16). Mr. Schuetta did so. (Compl. Ex. B). In fact, he wrote in the amount he expected to receive under his pension plan—a lesser amount than Aurora informed him he would receive under the annuity contract—over top of the stated benefit amount before returning the letter. (Compl. Ex. B).

Throughout this time, Aurora never corrected Mr. Schuetta's mistaken impressions. (Compl. ¶ 16). Despite Mr. Schuetta's mistaken belief, made clear to Aurora during both a phone conversation and when Mr. Schuetta

Page 3 of 12

returned the letter with his corrections (which lacked support in Aurora's letters), Aurora never corrected Mr. Schuetta's mistaken beliefs. (Compl. ¶ 16).

Thus, Aurora allegedly never made Mr. Schuetta aware that he was entitled to the $397.51 monthly annuity. (Compl. ¶¶ 6, 16). Lacking that awareness, Mr. Schuetta also was not aware that he needed to submit a notification to Aurora to trigger his receipt of the annuity. (Compl. ¶ 7).

As such, for a period of more than 20 years—from approximately 1991 through 2013—Mr. Schuetta was entitled to receive the $397.51 monthly annuity, but did not. (Compl. ¶ 7).

He became aware of this only after the death of his wife. (Compl. ¶ 7). At that time, Aurora called Mr. Schuetta to inform him of the fact that the annuity in his benefit remained outstanding and that he could begin to receive it—and all of the amounts owing to him beginning in 1991—if he submitted a notification form. (Compl. ¶ 7).

Mr. Schuetta submitted the form, but Aurora changed its position, and told Mr. Schuetta that he would be entitled only to *future* payments of the $397.51 monthly annuity, which would commence 60 days after his submission of the notification form. (Compl. ¶ 8). He would not be entitled to receive the approximately $100,000.00 in payments that would have been paid to him if he had timely submitted the notification form in 1991. (Compl. ¶ 8).

Aurora's refusal to pay that amount precipitated this litigation, in which Mr. Schuetta claims that he is entitled to receive the entire amount of payments dating back to 1991. Mr. Schuetta asserts several causes of action against Aurora: (1) breach of contract (Compl. ¶¶ 11–14); (2) reformation of contract (Compl. ¶¶ 15–19); (3) equitable estoppel (Compl. ¶¶ 20–24); (4)

breach of the implied duty of good faith and fair dealing inherent in the annuity contract (Compl. ¶¶ 25–28); and (5) negligence (Compl. ¶¶ 29–32).

3. DISCUSSION

Aurora has moved to dismiss only three of those claims: the reformation of contract claim (the "reformation claim"); the breach of implied duty of good faith and fair dealing claim (the "breach of duty claim"); and the negligence claim. (Docket #3). The Court has considered the parties' arguments in that regard, and agrees with Aurora that the reformation claim must be dismissed. It, however, disagrees as to the breach of duty claim and economic loss doctrine claims, and finds that Mr. Schuetta is entitled to proceed on those claims.

3.1 Reformation Claim

There is little question that the Court must dismiss Mr. Schuetta's reformation claim.

Under Wisconsin law, when an agreement between parties "fails to express a prior agreement between [them] because of either the mutual mistake of both parties regarding the contents or effect of the [contract] or the mistake of one party coupled with fraud or inequitable conduct by the other party, the [contract] may be reformed to reflect the prior agreement." *Milwaukee Metro. Sewerage Dist. v. Am. Int'l Specialty Lines Ins. Co.*, 598 F.3d 311, 317 (7th Cir. 2010) (citing *Russ ex rel. Schwartz v. Russ,* 302 Wis.2d 264, 734 N.W.2d 874, 885 (2007); *Vandenberg v. Continental Ins. Co.,* 244 Wis.2d 802, 628 N.W.2d 876, 889 n. 35 (2001)). This is because "Wisconsin has adopted the rule found in Restatement (Second) of Contracts § 166," providing that if one party induces another to enter into a contract through a "fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the

recipient may reform the writing to express the terms of the agreement as asserted." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (7th Cir. 2010) (citing *Hennig v. Ahearn*, 230 Wis. 2d 149, 601 N.W.2d 14, 26 (1999)).

In other words, reformation of a contract is appropriate where one party fraudulently induces another to enter into a contract by representing that the written contract says (or will say) something that it ultimately does not. In such an instance, courts may intervene and order that the contract be reformed to reflect the agreement that the duped party believed he or she was entering.

That is simply not the case that the Court confronts, here. Mr. Schuetta does not allege that Aurora made any false representations to him (or to Dana Corporation) when the contract *was formed*. The only allegedly false representations occurred after formation, when Aurora allegedly failed to inform Mr. Schuetta of his mistaken beliefs. But those alleged misrepresentations had no effect, whatsoever, on the contract. In fact, it seems that the contract provided exactly what was bargained for between Aurora and Dana Corporation: annuity benefits for retired employees that would take effect upon notice from the employee. Mr. Schuetta complains that Aurora made misrepresentations to him that impeded the *performance* of that contract, but there is no allegation that the contract said something different than what the parties agreed upon.

Accordingly, Mr. Schuetta has not stated a valid claim for reformation of contract, and the Court is obliged to dismiss that portion of his complaint.

3.2     Breach of Duty Claim

On the other hand, the Court must allow Mr. Schuetta's breach of duty claim to proceed. Mr. Schuetta contends that, by failing to correct his mistaken impression regarding the notice of annuity he received, Aurora

breached duties of good faith and fair dealing that were implicit in the annuity contract.

In Wisconsin, "every contract implies good faith and fair dealing between the parties to it." *Bozzacchi v. O'Malley*, 211 Wis. 2d 622, 626, 566 N.W.2d 494 (Ct. App. 1997). *See also Metavante*, 619 F.3d at 765–66 (citing *Kreckel v. Walbridge Aldinger Co.*, 295 Wis. 2d 649, 721 N.W.2d 508, 514 (2006)); *Alumni Research Found. v. Xenon Pharms., Inc.*, 591 F.3d 876, 885 n. 5 (7th Cir. 2010); *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 660 (7th Cir. 2010). "A contracting party can breach its duty of good faith even if it does not violate any express term of the contract." *Williamson v. Mills*, 2013 WI App 155, ¶ 11, 350 Wis. 2d 507, 838 N.W.2d 137 (citing *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 796, 541 N.W.2d 203 (Ct. App. 1995)). "The duty of good faith obliges each party not to intentionally do anything to prevent the other party either from carrying out his or her part of the agreement or from receiving the fruits of the contract." *Williamson*, 2013 WI App 155, ¶ 11 (citing *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169). *See also Racine Harley-Davidson, Inc. v. Harley-Davidson Motor Co., Inc.*, 2008 WI App 135, ¶ 23, 313 Wis. 2d 831, 756 N.W.2d 810 (citing Wis. JI-Civil 3044). In fact, "contracts impose on the parties thereto a duty to do everything necessary to carry them out," and imply that each party "will not intentionally and purposely do anything to prevent the other party from carrying out his [or her] part of the agreement." *Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 35, 291 Wis. 2d 393, 717 N.W.2d 58 (citing *Ekstrom v. State*, 45 Wis. 2d 218, 222, 172 N.W.2d 660 (1969)). Additionally, a breach of the duty of good faith can be "shown by proof of: evading the spirit of the bargain [or] exhibiting lack of diligence." *Non*

*Typical, Inc. v. Transglobal Logistics Grp., Inc.*, No. 10-CV-1058 2011 WL 1792927 (E.D. Wis. May 11, 2011) (citing *Foseid*, 197 Wis. 2d at 796–97, 541 N.W.2d at 213). This general duty of good faith and fair dealing "is intended as a guarantee against arbitrary or unreasonable conduct by a party." *Denil v. deBoer, Inc.*, 748 F. Supp. 2d 967, 978–79 (W.D. Wis. 2010), *aff'd,* 650 F.3d 635 (7th Cir. 2011) (quoting *Foseid*, 197 Wis. 2d at 796, 541 N.W.2d at 213 (internal quotation marks omitted)). "The touchstones of good faith are honesty and reasonableness." *Racine Harley*, 2008 WI App 135, ¶ 23 (citing *Schaller v. Marine Nat'l Bank*, 131 Wis. 2d 389, 403, 388 N.W.2d 645 (Ct. App. 1986)).

Mr. Schuetta's claims fit perfectly within the above-described mold of claims asserting the breach of the implied duty of good faith and fair dealing. He alleges that Aurora's representatives knew of his misunderstanding of the letter he received, and—in spite of that knowledge—chose not to correct his misunderstanding. He argues that Aurora's unreasonable and/or dishonest decision not to explain the situation to Mr. Schuetta prevented him from carrying out his part of the contract. In other words, he argues that Aurora intentionally, or through lack of diligence, prevented him from receiving the fruits of the annuity contract. Under the case law described above, this states a claim for breach of the implied duty of good faith and fair dealing—even if Aurora was in complete compliance with the terms of the annuity contract. *See, e.g.*, *Williamson v. Mills*, 2013 WI App 155, ¶ 11; *Non Typical*, 2011 WL 1792927; *Denil*, 748 F. Supp. 2d at 978–79; *Racine Harley*, 2008 WI App 135, ¶ 23; *Metropolitan Ventures*, 2006 WI 71, ¶ 35; *Tang,* 2007 WI App 134, ¶ 41; *Foseid*, 197 Wis. 2d at 796, 541 N.W.2d 203; *Ekstrom*, 45 Wis. 2d at 222, 172 N.W.2d 660.

Therefore, the Court finds that Mr. Schuetta has adequately stated a claim for breach of the implied duty of good faith and fair dealing, and therefore the Court will allow him to proceed on that claim.

### 3.3 Negligence Claim

Finally, the Court turns to Mr. Schuetta's negligence claim. On this claim, Mr. Schuetta alleges that Aurora owed him and all other annuity recipients a duty of care to ascertain their identity and ensure that they received benefits as necessary. (Compl. ¶ 30). Thus, Mr. Schuetta argues, Aurora's failure to realize that he was entitled to an annuity constitutes a negligent breach of that duty of care. (Compl. ¶ 31). Aurora has moved to dismiss this claim, asserting that it is barred under Wisconsin's economic loss doctrine. This is a much closer question than the ones considered above.

"The economic loss doctrine is a judicially created doctrine that seeks '(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.'" *Walker v. Ranger Ins. Co.*, 2006 WI App 47, ¶ 7, 289 Wis. 2d 843, 711 M.W.2d 683 (quoting *Van Lare v. Nogt, Inc.*, 2004 WI 110, ¶ 17, 274 Wis. 2d 631, 683 N.W.2d 46). It generally prevents a contracting party from recovering purely "economic losses"—or damages resulting from a product's failure to live up to expectations or to adequately perform its intended use—under tort law, when the claimed losses are associated with the contractual relationship. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 27, 283 Wis. 2d 555, 699 N.W.2d 205. *See also Below v. Norton*, 2008 WI 77, ¶ 24, 310 Wis. 2d 713, 751 N.W.2d 351. Thus, to determine whether the economic loss doctrine applies, the Court must look to the nature of the

damages the plaintiff seeks. Ralph C. Anzivino, *The Economic Loss Doctrine: Distinguishing Economic Loss from Non-Economic Loss*, 91 MARQ. L. REV. 1081, 1081–82 (2008) (citing *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 916, 437 N.W.2d 213, 215 (1989); RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 1 (1998); *E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 869–71 (1986)) (noting that, "According to the economic loss doctrine, a buyer who purchases a defective product and suffers 'solely economic loss' is required to recover his damages through contract law," but that "if the product causes 'personal injury' or 'other property' damage, then negligence and strict liability theories are available. The nature of the loss incurred dictates whether the buyer's claim is to be brought in contract or tort.").

"The genesis of the economic loss doctrine lies in products liability cases," and the Uniform Commercial Code's provision of warranties and remedies is one of "the critical rationales underlying the doctrine." *Ins. Co. of N. Am. v. Cease Elec. Co.*, 2004 WI 139, ¶¶ 26, 32, 276 Wis. 2d 361, 688 N.W.2d 462. On that basis, the Wisconsin Supreme Court has declined to extend the doctrine to cover service contracts. *Id.*, at ¶ 36. In doing so, the Court cited the inapplicability of the U.C.C.—seemingly Article 2 thereof, given the fact that the *Cease* court cited two extraterritorial cases that distinguished between "goods" under Article 2 and "services"—to service contracts. *Id.* (citing *Cargill, Inc. v. Boag Cold Storage Warehouse*, 71 F.3d 545, 550 (6th Cir. 1995); *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 315 (Minn. 1987) ("a recognition of tort actions in cases under the U.C.C. would upset the remedies contained in the U.C.C.; when the rationale is not applicable, i.e., when the U.C.C. does not apply, there is no reason for the [economic loss] rule to apply.")).

And this is the primary point that gives the Court pause: while, technically, an annuity contract may be a "product," it does not seem to meet the definition of "goods" provided in Article 2, and therefore does not seem to entitle Mr. Schuetta to any U.C.C. warranty or remedy. Wis. Stat. §§ 402.105(1)(c) ("'Goods' means all things…which are movable…, investment securities (ch. 408), and things in action."), 408.103(2) ("An 'investment company security' is a security.…'Investment company security' does not include an insurance policy or endowment policy or *annuity contract issued by an insurance company.*" (emphasis added)). Therefore, one of the very foundations of the economic loss doctrine—something that the *Cease* court focused on very closely in determining not to apply the doctrine to a service contract—does not support application of the doctrine in this case to an annuity contract. *Cease*, 2004 WI 139, at ¶ 36. Moreover, an annuity contract is not the type of product that is generally of concern in economic loss doctrine cases, which most often deal with manufactured products that are under warranty. While those products may be defective, such that they fail or do not live up to a contracting party's expectations, insurance contracts are of a different ilk. For example, here, Mr. Schuetta is not claiming that the "product" he is a beneficiary of—the annuity contract—was defective in some way. Rather, he is asserting that Aurora's representatives acted deficiently.

Given these distinctions between the case at hand and the general application of and policy behind the economic loss doctrine, the Court finds that it would be inappropriate to apply the economic loss doctrine, here.

With all of the foregoing said, the Court notes that this appears to be an entirely novel issue of law, which neither Wisconsin's state nor federal courts have yet addressed. To the extent that the parties, particularly Aurora,

uncovers some contrary authority and wishes to have the Court reconsider this issue, they may so move at any time prior to trial.

However, for the time being, the Court believes it wisest to deny Aurora' motion to dismiss this count. It will do so, and allow discovery to proceed on this issue.

4. CONCLUSION

For the above-stated reasons, the Court determines that it is obliged to grant Aurora's motion to dismiss insofar as that motion seeks dismissal of Mr. Schuetta's reformation claim. It must also deny Aurora's motion as the motion relates to Mr. Schuetta's breach of duty and negligence claims.

Accordingly,

IT IS ORDERED that Aurora's motion to dismiss (Docket #3) be and the same is hereby GRANTED in part, insofar as Aurora seeks dismissal of Mr. Schuetta's reformation claim, and Mr. Schuetta's reformation claim be and the same is hereby DISMISSED with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

IT IS FURTHER ORDERED that Aurora's motion to dismiss (Docket #3) be and the same is hereby DENIED in part, insofar as Aurora seeks dismissal of Mr. Schuetta's breach of duty and negligence claims, and Mr. Schuetta shall be allowed to proceed on his breach of duty and negligence claims.

Dated at Milwaukee, Wisconsin, this 27th day of November, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge