# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEO R. SCHUETTA,

                          Plaintiff,

v.                                                          Case No. 13-CV-1007-JPS

AURORA NATIONAL LIFE
ASSURANCE COMPANY,

                          Defendant.                        ORDER

        The plaintiff, Leo Schuetta, initially filed this case in Racine County
Circuit Court. (*See* Docket #1). The defendant, Aurora National Life
Assurance Company ("Aurora"), however, removed the case to federal court
on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441. (*See* Docket #1).
The crux of this matter is Aurora's refusal to pay annuity benefits to Mr.
Schuetta dating back to the date of his retirement, because Mr. Schuetta did
not file a required notification with Aurora. The Court has already partially
granted Aurora's motion to dismiss (*see* Docket #22) and refused to allow Mr.
Schuetta's to amend his complaint (*see* Docket #31). Thus, there are only a
few claims remaining; Aurora has moved for summary judgment on all of
them (Docket #33). The parties have fully briefed Aurora's motion for
summary judgment (Docket #34, #38, #42), and the Court turns to decide it.

1.      BACKGROUND

        Before discussing the parties' legal arguments, the Court first provides
the factual and procedural background that underpins this case.

Mr. Schuetta is a former employee of Dana Corporation. (DPFF ¶ 5).[1] In connection with Mr. Schuetta's employment, Dana Corporation purchased a retirement annuity for him, which was intended to provide benefits to him upon his retirement. (DPFF ¶ 5). Dana Corporation purchased that annuity through Executive Life Insurance Company ("Executive Life") in December of 1989. (DPFF ¶ 5).

Shortly after Dana Corporation purchased the annuity, Executive Life began to have serious financial troubles. (*See* DPFF ¶ 6). The California Superior Court placed Executive Life in conservation in April of 1991. (DPFF ¶ 6). Two years later, the California Superior Court approved a rehabilitation plan for Executive Life and its assets. (DPFF ¶ 6).

As part of that rehabilitation plan, Aurora assumed all of Executive Life's annuity and insurance contracts, as they had been restructured under the rehabilitation plan. (DPFF ¶ 7). Aurora's assumption of those contracts was effective on September 3, 1993, although Dana Corporation had until February 12, 1994, to opt out of the rehabilitation plan. (DPFF ¶¶ 7–8).

Dana Corporation did not opt out, and therefore effectively agreed to participate in the rehabilitation plan. (DPFF ¶¶ 9–10). This meant that Dana Corporation agreed to have Aurora assume Dana Corporation's annuity contracts under a restructured agreement. (DPFF ¶¶ 9–10).

In January of 1994, Mr. Schuetta personally agreed to Aurora's assumption of his annuity contract, and also accepted the terms of the restructured agreement. (DPFF ¶ 11). He now objects to this fact by arguing

---

[1]The Court will refer to Aurora's proposed findings of fact as "DPFF," standing for "Defendant's Proposed Findings of Fact." By and large, Mr. Schuetta agrees with Aurora's proposed facts. Thus, unless the Court expresses otherwise, it also accepts Aurora's proposals.

that he did not necessarily understand the terms of the restructured annuity contract and may also have confused the annuity contract with a separate pension he was to receive. (*See* Pl.'s Resp. to DPFF ¶ 11). However, any confusion on his part does not negate the fact that he signed an agreement to be bound by the terms of the restructured annuity contract and to allow Aurora to assume that contract. (*See, e.g.,* DPFF ¶ 11 (citing Paul E. Benson Declaration, Ex. A; Schuetta Depo. Tr., Ex. 3.; and Stoll Decl. ¶ 10, all of which clearly establish Mr. Schuetta's having signed the agreement in question)).

Under the terms of the restructured annuity contract, Mr. Schuetta would be entitled to receive a monthly annuity benefit of $397.51. (DPFF ¶ 12). And Mr. Schuetta was *eligible* to receive that benefit immediately after agreeing to the restructured contract and Aurora's assumption. (DPFF ¶¶ 12, 14 (Mr. Schuetta's eligibility began upon his retirement, which occurred on May 1, 1990)).

However, under the terms of the restructured annuity contract, Mr. Schuetta was not entitled to begin receiving benefits until he submitted a benefit election form . (DPFF ¶ 13). The restructured contract specifically states that:

> In order to begin receiving Benefit Payments, a Deferred Participant must: (i) unless otherwise provided in the Schedule of Benefits, terminate employment (as determined by the Owner or the Owner's successor or affiliate), and (ii) elect one of the available Benefit Payment Options described in the Schedule of Benefits.

(Schuetta Depo Tr., Ex. 9, at 7). In other words, Mr. Schuetta was not entitled to begin receiving payments until he elected his payment option by submitting the required form.

And, unfortunately, Mr. Schuetta did not ever submit that form. He claims he did not even know that he had an annuity (and, consequently, was unaware that he should have submitted a form to start receiving his annuity benefits). (DPFF ¶ 16). This makes some sense: Mr. Schuetta began receiving a pension payment from Dana Corporation after his retirement, and he may have conflated that pension payment with his annuity benefit. (*See* DPFF ¶ 15). Furthermore, while he does remember Dana Corporation's employees explaining his pension benefits, he has no recollection of them ever explaining his annuity benefit. (DPFF ¶ 17). His confusion is further borne out by the fact that—shortly after his retirement, but before Executive Life had entered conservation—he sent Executive Life a letter correcting the terms listed regarding his annuity contract so that they resembled his pension benefits. (*See* DPFF ¶¶ 18; Schuetta Depo. Tr., Ex. 2). Specifically, he mailed a copy of his original annuity contract back to Executive Life, having indicated that he was entitled to only $316.14 per month, that his annuity was a "100% Survivor Life Annuity," and that his retirement date should have been listed as May 1, 1990 (although it seems that he cannot specifically recall who wrote in those changes). (*See* DPFF ¶¶ 18; Schuetta Depo. Tr., Ex. 2; Schuetta Depo. Tr. 42:21–43:1). Mr. Schuetta also had a phone conversation with an Executive Life representative, which he referenced in his letter to Executive Life; however, the record evidence does not establish the contents

of that conversation or its participants and Mr. Schuetta does not remember the conversation.[2]

Whatever the reason for Mr. Schuetta's confusion, there is absolutely no question that he did not submit the required election form to Aurora until 2012, well after his retirement. (DPFF ¶¶ 20–21). He took absolutely no action regarding his annuity contract between 1990 and 2012, aside from returning his agreement to the restructured annuity contracts and having the telephone conversation with Executive Life's representative. (DPFF ¶ 21).

It was not until Aurora performed a routine audit in 2012 that Mr. Schuetta ever had any conversation with Aurora—and that conversation happened at Aurora's initiation. (DPFF ¶ 22). Aurora discovered that Mr. Schuetta's wife had passed away during a routine audit, and on October 30, 2012, mailed him a letter with a "Pension Benefit Questionnaire" form, informing him about his benefit options. (DPFF ¶ 22). Mr. Schuetta's daughter called Aurora and filled out the Pension Benefit Questionnaire, hoping to get Mr. Schuetta's benefits to begin. (DPFF ¶¶ 23–24). On that

---

[2]On this point, the Court notes that Mr. Schuetta has submitted an affidavit purporting that while he does not have any specific memory about the telephone conversation, he is "absolutely certain" that the purpose for his call "was to correct the Defendant about the amount of [his] pension." (Docket #40, ¶ 6). His affidavit is either inconsistent with his deposition testimony (as in his statement that he does not remember anything from the conversation, Schuetta Depo. Tr. 39:8–39:25) or flat-out contradictory (as in his discussion of who made the corrections to the form, Schuetta Depo. Tr. 41:20–42:17). The Court, therefore, will not treat Mr. Schuetta's affidavit as controlling, except to the extent that it is consistent with his deposition testimony. *See Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995). Doing so, the Court can only credit him on the very broad point that he discussed his pension with an Executive Life representative. It cannot determine what was said in the conversation.

form, in response to the prompt, "I hereby request the Retirement Benefit to commence on _____," Mr. Schuetta wrote in only the number "1," rather than a date. (DPFF ¶ 25; Schuetta Depo. Tr., Ex. 5). Mr. Schuetta's daughter thereafter called Aurora on three separate occasions to check up on the processing of Mr. Schuetta's benefits. (Stoll Decl., Exs. B–D). In one of those calls, the following exchange occurred:

> AURORA [Representative]:   Ah, no, you don't need to call back on Monday. What they will do is once they complete the work, then it will then go back to the processor to provide you that information.
>
> SZLAGOWSKI [Mr. Schuetta's daughter]:   And then that will let us know the payout and everything.
>
> AURORA:   That's correct.
>
> SZLAGOWSKI:   Because it was supposed he was supposed to start getting it in 1990, so will they give us backpay?
>
> AURORA:   Yes.

(Stoll Decl., Ex. C).[3] The parties disagree over the import of the representative's affirmative response to the question regarding back pay. Ultimately, the parties' arguments do not rest upon that answer, and the Court finds it to be immaterial.

Later conversations and communications reinforced that Mr. Schuetta would not be entitled to pay dating back to 1990. (*See, e.g.* DPFF ¶¶ 28, 31; Stoll Decl., Exs. D–E). On January 10, 2013, Mr. Schuetta's daughter called Aurora and was specifically told that Mr. Schuetta would not receive benefits

---

[3] Mr. Schuetta alleges that Aurora answered "[t]hat's correct" to his daughter's question as to whether they would receive back pay, but he must have misread the transcript. (Resp. to DPFF ¶ 27). It is clear that the Aurora representative responded "[t]hat's correct" to the question whether the information would let them know the payout.

dating back to 1990. (Stoll Decl., Ex. D). On January 15, 2013, Aurora sent Mr. Schuetta a letter, specifically indicating that it would back date his benefits only to December 1, 2012. (DPFF ¶ 28). On February 12, 2013, Aurora called Mr. Schuetta and told him that he would not be entitled to any benefits before December 1, 2012. (DPFF ¶ 31 (Mr. Schuetta objects to this fact, but only insofar as he disagrees with the importance that Aurora attempts to assign to it)).

In that February 12, 2013, phone call, Aurora told Mr. Schuetta that it would mail him a check for benefits backdated to December 1, 2012, but no earlier. (DPFF ¶ 32). In keeping with that representation, Aurora sent Mr. Schuetta a check for $1,192.53, constituting annuity payments for the months of December 2012, January 2013, and February 2013. (DPFF ¶ 34). Mr. Schuetta deposited that check into his bank account, and the check cleared Aurora's bank on February 19, 2013. (DPFF ¶¶ 37–38).

Shortly thereafter, Mr. Schuetta retained counsel and filed the instant lawsuit seeking additional benefits. (DPFF ¶¶ 39–41). In his complaint, Mr. Schuetta asserted five separate claims: (1) breach of contract (the "breach of contract claim"; Compl. ¶¶ 11–14); (2) reformation of contract (the "reformation of contract claim"; Compl. ¶¶ 15–19); (3) equitable estoppel (the "equitable estoppel claim"; Compl. ¶¶ 20–24); (4) breach of the implied duty of good faith and fair dealing inherent in the annuity contract (the "breach of implied duty claim"; Compl. ¶¶ 25–28); and (5) negligence (the "negligence claim"; Compl. ¶¶ 29–32). Aurora moved to dismiss three of those claims (Docket #3), but the Court dismissed only the reformation of contract claim (Docket #22). Thereafter, Mr. Schuetta attempted to amend his

complaint to add a breach of fiduciary duty claim. (Docket #26, #27). The Court denied that motion as both futile and unduly delayed. (Docket #31).

Thus, only four claims remain pending: the breach of contract claim; the equitable estoppel claim; the breach of implied duty claim; and the negligence claim. Aurora has moved for summary judgment on all four of those claims, and the Court now turns to addressing that motion.

2.    DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Aurora raises a number of arguments against Mr. Schuetta's specific claims, but also one broad argument that would apply to all of Mr. Schuetta's claims to bar them. The Court addresses that broad argument—relating to the concept of accord and satisfaction—first, and thereafter addresses Mr. Schuetta's more specific arguments as they relate to the specific claims in his complaint.

2.1    Accord and Satisfaction

"An accord and satisfaction is an agreement between the parties to discharge an existing disputed claim." *Go Wireless, LLC v. Maryland Cas. Co.*, 2013 WI App 41, ¶ 15, 346 Wis. 2d 731, 828 N.W.2d 592 (citing *Hoffman v.*

*Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979)).[4] Under the doctrine, if a debtor offers a check to its creditor as full payment for a claim, and the creditor cashes that check, then the Court must treat the creditor as having accepted the debtor's offer to settle the debt for the amount of the check. *Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis. 2d 95, 101, 341 N.W.2d 655 (1984). This is, essentially, a contract: for there to be a valid accord and satisfaction, there must be an offer, acceptance, and consideration. *Id.*, at 112).

With reference to the offer requirement, the Court must ensure that the debtor's offer "contains expressions sufficient to make the creditor understand that [the check] is offered in full satisfaction of the creditor's claim." *Go Wireless*, 2013 WI App 41, ¶ 17 (citing *Hoffman*, 86 Wis. 2d at 453, 273 N.W.2d 214). There is no "magic language" needed to satisfy this requirement; rather, the Court simply must ensure that the creditor had reasonable notice that the check was intended to be in full satisfaction of the debt, applying reason to the situation. *Go Wireless*, 2013 WI App 41, ¶ 17 (citing *Flambeau*, 116 Wis. 2d at 111, 341 N.W.2d 655; *Myron Soik & Sons, Inc. v. Stokely USA, Inc.*, 175 Wis. 2d 456, 466, 498 N.W.2d 897 (Ct. App. 1993)).

In accord and satisfaction cases, courts do not need to find mental assent or meeting of the minds between the parties in order to conclude that there was acceptance. *Hoffman*, 86 Wis. 2d at 454, 273 N.W.2d 214. Rather, the

---

[4]Because the Court sits in diversity jurisdiction in the present action, it is "required to apply the substantive law of [Wisconsin]…as we believe the highest court of the state would apply it." *GE Betz, Inc. v. Zee Co., Inc.*, 718 F.3d 615, 626 (7th Cir. 2013) (citing *Wolverine Mut. Ins. v. Vance ex rel. Tinsley*, 325 F.3d 939, 942 (7th Cir. 2003); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Court can look to the creditor's actions or words to determine whether it accepted an offer; and if the creditor's actions evidence acceptance—for instance, if the creditor cashes the check—then the Court can find acceptance, *even if the creditor's words express otherwise. Go Wireless*, 2013 WI App 41, ¶ 24 (citing *Flambeau*, 116 Wis. 2d at 99, 341 N.W.2d 655).

As to consideration, the Wisconsin Court of Appeals recently held that, so long as "'something of monetary value and of interest to the parties'" is exchanged, it will find consideration. *Go Wireless*, 2013 WI App 41, ¶ 25 (citing *Tower Ins. Co. v. Carpenter*, 205 Wis. 2d 365, 371, 556 N.W.2d 384 (Ct. App. 1996)). Thus, in *Go Wireless*, the Wisconsin Court of Appeals found consideration where the debtor—an insurance company—offered to pay an amount for fire insurance under the parties' insurance contract; "the resolution of the parties' dispute over the amount of coverage therefore provided sufficient consideration for an accord and satisfaction." 2013 WI App 41, ¶ 25.

Given this state of the law, there are several reasons that the Court cannot find accord and satisfaction in this case.

To begin, the Court is unable to conclude that Aurora offered the check to Mr. Schuetta to "discharge an existing disputed claim." *Go Wireless*, 2013 WI App 41, ¶ 25 (citing *Hoffman*, 86 Wis. 2d at 453, 273 N.W.2d 214). In reality, there was no dispute about Mr. Schuetta's claim for benefits beginning on December 1, 2012. Rather, he was entitled to those benefits under the contract, as he had provided the required notices by that point. Moreover, Aurora never disputed his entitlement to those benefits. Thus, when Aurora offered Mr. Schuetta the check for benefits from December 2012 through February 2013, it simply was not offering that check to discharge an

existing disputed claim; rather, it was discharging only its obligations under the parties' contract. "[P]ayment of part of a debt which is not disputed as to amount does not discharge the debt altogether, even when it is expressly agreed that the partial payment is in full satisfaction." *Flambeau*, 116 Wis. 2d at 113. Thus, here, where Aurora paid the full amount of an undisputed portion of the debt, the Court cannot find accord and satisfaction.

However, even if the Court could find that Aurora's check was intended to satisfy a dispute over benefits dating back to Mr. Schuetta's retirement, it still could not find that Mr. Schuetta had any reason to understand that the check was offered for that purpose. As already discussed, to be construed as an offer, a debtor's communications must "contain[ ] expressions sufficient to make the creditor understand that [the check] is offered in full satisfaction of the creditor's claim." *Go Wireless*, 2013 WI App 41, ¶ 17 (citing *Hoffman*, 86 Wis. 2d at 453, 273 N.W.2d 214). To be sure, the Court must simply apply its reason to determine whether Mr. Schuetta had notice that the check was intended to satisfy all of his claims for past benefits; there is no "magic language" that the Court must find. *Go Wireless*, 2013 WI App 41, ¶ 17 (citing *Flambeau*, 116 Wis. 2d at 111, 341 N.W.2d 655; *Myron Soik & Sons, Inc. v. Stokely USA, Inc.*, 175 Wis. 2d 456, 466, 498 N.W.2d 897 (Ct. App. 1993)). But, here, there is *no* language that would support a finding that Mr. Schuetta understood the check to have been offered in satisfaction of his claim for past benefits. In his only telephone conversation with an Aurora representative, Mr. Schuetta was told that he would only receive back pay for "sixty days per the contract, sir. That's the furthest we'll go back." (DPFF ¶ 32; Stoll Decl., Ex. E). That was also the position that Aurora took in its discussion with Mr. Schuetta's daughter: that

the contract's terms did not allow for Mr. Schuetta to receive back pay to 1990. (*See* Stoll. Decl., Ex. D). At his deposition, Mr. Schuetta acknowledged only that Aurora stated that it would pay him only for two months of back pay, and that such an arrangement "wasn't [his] agreement." (DPFF ¶ 35). But the question is not whether Mr. Schuetta understood the payments to constitute satisfaction of his contract claims; rather, the question is whether he understood the check to be offered in full satisfaction of *all* of his claims. *See Go Wireless*, 2013 WI App 41, ¶ 17 (citing *Hoffman*, 86 Wis. 2d at 453, 273 N.W.2d 214). Seeing as Aurora never even hinted that acceptance of the check would constitute a waiver of his claims, the Court cannot find that there was an offer, here.

However, even assuming that there was an offer and acceptance,[5] there was no consideration to support a finding of accord and satisfaction. Mr. Schuetta filed his claim for benefits and, as acknowledged by Aurora's representative, was therefore entitled to 60 days of back benefits. (Stoll Decl., Ex. E ("sixty days per the contract, sir. That's the furthest we'll go back.")). So, then, of what value was Aurora's offer to pay 60 days of back benefits? None. The defendants argue that this case is similar to *Go Wireless*, in which the Wisconsin Court of Appeals found that an insurance company's offer to pay the policy limits under a contract, "[b]ecause the amount of business personal property coverage was of monetary value and was in controversy." (Def.'s Reply, 6 (citing *Go Wireless*, 2013 WI App 41, ¶ 25; *Tower Ins. Co. v.*

---

[5]As to acceptance, Mr. Schuetta's having cashed the check would likely constitute acceptance, if there was a valid offer to begin with. *See Go Wireless*, 2013 WI App 41, ¶ 24 (citing *Flambeau*, 116 Wis. 2d at 99, 341 N.W.2d 655) (if creditor's actions evidence acceptance, for example by cashing a check, then the Court can so find).

*Carpenter*, 205 Wis. 2d at 371)). Whereas in *Go Wireless*, the amount of coverage was "clearly in controversy"—as evidenced by the insurers assertion that it did not waive the terms or conditions of the insurance contract and retained its defenses (2013 WI App 41, ¶¶ 22, 25)—in this case, there never seemed to be any controversy surrounding Mr. Schuetta's entitlement to benefits. Rather, all along, he had been told that he would receive benefits back to December 2012. (*See, e.g.*, Stoll Decl., Exs. B–E). Accordingly, the situation discussed in *Go Wireless*, 2013 WI App 41, ¶ 25, and *Tower Ins. Co.*, 205 Wis. 2d at 371, do not apply. Because Mr. Schuetta received nothing of value above and beyond the terms of his contract, he did not receive consideration. *Bartley v. Thompson*, 198 Wis. 2d 323, 333, 542 N.W.2d 227 (Ct. App. 1995).

Aurora's arguments in this regard are unpersuasive, and the Court will deny Aurora's motion insofar as Aurora seeks summary judgment on the basis of accord and satisfaction.

### 2.2    Breach of Contract Claim

On the other hand, the Court finds Aurora's arguments in favor of dismissing the breach of contract claim to be persuasive.

A breach of contract claim has three elements: (1) a valid contract; (2) a violation or breach of the terms of that contract; and (3) damages. *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶ 10, 267 Wis. 2d 873, 672 N.W.2d 141; *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582 (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296, 187 N.W.2d 200 (1971)).

The only true dispute as to this issue is whether there was actually a breach. The parties agree that there was a valid contract—in this case, the

annuity contract. (*E.g.* Def.'s Br. in Supp., 14). Moreover, they seem to assume that—if there was a contract and breach—there were damages. Accordingly, the remaining question is whether Aurora can possibly be said to have breached the contract.

Mr. Schuetta points out that a breach of contract occurs when "there is a failure of the defendant to do what it undertook to do." (Pl.'s Br. in Supp. 6 (citing *Brew City*, 2006 WI App 39, ¶ 11)).

Applying that formulation, the Court cannot possibly find that Aurora breached the annuity contract. Mr. Schuetta has not identified any provision of the annuity contract that Aurora has breached. (Pl.'s Resp. 6–7). He attempts to do so by arguing—vaguely and broadly—that the contract is ambiguous and that Aurora breached it by not paying benefits under it. (Pl.'s Resp. 6–7). But that ignores the non-ambiguous language requiring Mr. Schuetta to provide an election before he could begin receiving payments:

> In order to begin receiving Benefit Payments, a Deferred Participant must: (i) unless otherwise provided in the Schedule of Benefits, terminate employment (as determined by the Owner or the Owner's successor or affiliate), and (ii) elect one of the available Benefit Payment Options described in the Schedule of Benefits.

(Schuetta Depo Tr., Ex. 9, at 7). Mr. Schuetta argues that the above language is contradicted by other terms in the contract stating that he would be paid benefits after he retired and attained the age of 65; or that he would be paid so long as he is alive, retired on his "normal retirement date," and elected a life annuity. (Pl.'s Resp. 7). Those terms do not contradict the benefit-election requirement. Instead, they provide only the circumstances during which Aurora would pay the benefits, whereas the language quoted above provide for how plan participants *begin receiving* their benefits.

Having found no ambiguity, the Court looks to the terms of the contract, which are plain. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶ 14, 257 Wis. 2d 421, 651 N.W.2d 345. Under them, "[i]n order to begin receiving Benefit Payments," Mr. Schuetta "must" have "elect[ed] one of the available Benefit Payment Options." Mr. Schuetta never elected an available benefit option, and so Aurora never had an obligation to pay him his benefits, under the contract. Never having had any obligation to pay Mr. Schuetta benefits, Aurora can, therefore, not be found to have breached its contract. In other words, Aurora never "fail[ed]…to do what it undertook to do," *Brew City*, 2006 WI App 39, ¶ 11, namely to provide benefits after Mr. Schuetta's retirement and election.

In short, the contract is not ambiguous; instead, it clearly required Mr. Schuetta to file a benefit election form before Aurora had any obligation to pay him benefits. Because Mr. Schuetta did not file that form until 2012, Aurora had no duty to pay him benefits before that time. As such, Aurora did not breach its contract with Mr. Schuetta,[6] and the Court will grant Aurora's motion for summary judgment dismissing that claim.

### 2.3 Equitable Estoppel Claim

"[T]he test for equitable estoppel consists of four elements: '(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.'" *Village of Hobart v. Brown Cty.*, 2005 WI 78, ¶ 36, 281 Wis. 2d 628, 698 N.W.2d 83 (quoting the Wisconsin Court of Appeals decision it was reviewing; other internal

---

[6]Because the Court finds no breach, it need not address Aurora's statute of limitations argument on this issue.

quotations omitted). And, of course, as the plaintiff, Mr. Schuetta bears the burden to prove each of those elements.

Mr. Schuetta's equitable estoppel claim stems from Aurora's failure to request Mr. Schuetta's benefit election form at the time: (1) Mr. Schuetta called with a question in 1990; (2) Mr. Schuetta, in the same year, wrote a letter to Aurora identifying perceived errors with his annuity; and (3) Aurora sent the rehabilitation plan to Mr. Schuetta in 1994. (Pl.'s Resp. 8–9). Thus, essentially, Mr. Schuetta is arguing that—by failing to act in those circumstances—he reasonably relied on that non-action by not submitting a benefit election form to his detriment.

The issue of reasonable reliance is a question for trial, *Delap v. Institute of America, Inc.*, 31 Wis.2d 507, 512, 143 N.W.2d 476 (1966), and the parties do not seem to dispute that Mr. Schuetta acted to his detriment by not filing the benefit election.

Rather, Aurora all but acknowledges that the first element—action or inaction—is the primary issue. (Def.'s Br. in Supp., 17–18). In that regard, Aurora argues that "Schuetta has no evidence supporting his assertion that there was an action or non-action on Aurora's part." (Def.'s Br. in Supp., 17–18).

The Court disagrees. There *is* evidence of non-action on Aurora's part. Specifically, two of the three events that Mr. Schuetta has identified constitute non-action on Aurora's part: first, the non-response to Mr. Schuetta's misperceptions about his annuity, which were made apparent when Mr. Schuetta sent his 1990 letter; and, second, Aurora's failure to alert Mr. Schuetta to the existence of his annuity and his obligation to file an

election form when it provided him with the rehabilitation plan.[7] There is clear evidence that these events occurred, and both certainly constitute non-action. Thus, Mr. Schuetta has produced sufficient evidence of the first element of equitable estoppel to escape summary judgment in this regard.

Of course, that leaves open for trial the significant question of whether Mr. Schuetta's reliance on that inaction was reasonable. Mr. Schuetta may have a very difficult time proving so, given the contract language clearly required him to file the benefit election. Nonetheless, that is an issue for the jury.

Before closing this section, though, the Court must first acknowledge two remaining legal issues that the parties have not adequately addressed.

First, as Aurora has mentioned but not elaborated upon, Aurora did not enter the fray until approximately 1993. (Def.'s Reply, 9, n. 7). Thus, the Court questions whether the non-action of its predecessor, Executive Life, in failing to respond to Mr. Schuetta's letter, should be imputed to Aurora. If not, then that event would not satisfy the second element of equitable estoppel, and the Court would be obliged to dismiss Mr. Schuetta's claim insofar as it relied on that event. The parties have not briefed this issue, and it may be very complex—potentially involving an analysis of any contracts between Executive Life and Aurora or a detailed examination of the

---

[7]Mr. Schuetta has not carried his burden regarding the phone call. He produced no credible evidence regarding the discussion. (*See* Page 5, n.2, *supra*). Thus, the Court cannot even conclude, for instance, that the representative did not explicitly tell Mr. Schuetta to file his benefit election. For that reason, the Court cannot find that this is an action or non-action that could establish the first element of equitable estoppel. There is not enough evidence.

rehabilitation plan—so the Court will leave it to the parties, specifically Aurora, to delve further into the issue if they find it to be worthwhile.

Second, the Court questions whether Mr. Schuetta can use an equitable estoppel claim in the manner he does—essentially, as a sword, rather than a shield. In the cases that the Court has been able to locate, equitable estoppel is practically exclusively applied as a defense (a shield). In *Mohamed v. Reinhart Boerner Van Deuren, S.C.*, my colleague Judge Rudolph T. Randa of this district pointed out the lack of certainty on this question, but left the matter open. No. 10-CV-753, 2012 WL 1491860, *3 (E.D. Wis. Apr. 26, 2012) (citing *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997); *Hocking v. City of Dodgeville*, 326 Wis.2d 155, 174 n.10, 785 N.W.2d 398 (2010); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 456, 463 (7th Cir. 2010)). The Court will act consistently with Judge Randa, and assume that equitable estoppel may be applied as an affirmative claim (a sword), absent further briefing on the issue from the parties.

Accordingly, while the Court will deny Aurora's motion for summary judgment on the letter-related and rehabilitation-plan-notice aspects of Mr. Schuetta's equitable estoppel claim, it does so without prejudice. If Aurora believes that the law supports dismissal of those portions of the equitable estoppel claim for the reasons that the Court has discussed, it may renew its motion for summary judgment pursuant to the briefing schedule described below.

### 2.4    Breach of Implied Duty Claim

By virtue of the annuity contract, Aurora owed Mr. Schuetta the implied duty of good faith and fair dealing. *Bozzacchi v. O'Malley*, 211 Wis.2d 622, 626, 566 N.W.2d 494 (1997) (quoting *Chayka v. Santini*, 47 Wis. 2d 102, 107

n. 7, 176 N.W.2d 561 (1970) for the proposition that "[e]very contract implies good faith and fair dealing between the parties to it."). The duty is "halfway between a fiduciary duty (the duty of utmost good faith) and the duty merely to refrain from active fraud," *Mkt. St. Associates Ltd. P'ship v. Frey*, 941 F.2d 588, 595 (7th Cir. 1991). It is a guarantee that a party "will not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 35, 291 Wis.2d 393, 717 N.W.2d 58 (citations omitted). Generally speaking, "[w]hether a party to a contract has breached its implied duty of good faith is a question of fact." *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169 (citing *Wisconsin Natural Gas Co. v. Gabe's Constr. Co.*, 220 Wis.2d 14, 24 n. 6, 582 N.W.2d 118 (Ct.App. 1998)).

Aurora's primary argument in favor of its motion for summary judgment on Mr. Schuetta's breach of implied duty claim is that he has not presented evidence to support the claim. (Def.'s Br. in Supp. 18). The Court disagrees. As discussed above, there is evidence that Aurora had an opportunity to disabuse Mr. Schuetta of a mistaken belief and did not do so.[8] Aurora failed to respond to Mr. Schuetta's letter and to alert him to his annuity or obligation to submit a benefit election upon sending him the rehabilitation plan. A jury could conclude that those events breached the

---

[8]Again, with regards to Mr. Schuetta's 1990 phone call, the evidence is not clear enough to support any claim, because the discussions on that call could have been contrary to the position he takes now.

implied duty of good faith. Accordingly, the Court must determine that Mr. Schuetta has presented evidence to support his breach of implied duty claim.

Aurora also argues that the Court has already found that Aurora did not have a duty to tell Mr. Schuetta that he had an annuity or needed to submit a benefit election for (Def.'s Reply, 9–10), but that seems to confuse the existence of two separate duties. The Court's comments related only to the express terms of the contract and were made in regards to Mr. Schuetta's request to add a breach of fiduciary duty claim. (*See* Docket #31). A fiduciary duty is totally distinct from the implied duty of good faith. *E.g.*, *Mkt. St. Associates*, 941 F.2d at 595.

And, clearly, that implied duty exists by virtue of the existence of the annuity contract, *see, e.g.*, *Bozzacchi*, 211 Wis.2d at 626, and whether there has been a breach of that implied duty is a question of fact that must be presented to the jury, *Tang*, 2007 WI App 134, ¶ 41. The Court must, therefore, deny Aurora's motion for summary judgment in this regard.

However, the Court will deny that motion without prejudice. Again, the Court is concerned with imputing Executive Life's actions to Aurora with regard to the failure to respond to Mr. Schuetta's letter. That event occurred before Aurora had taken over Executive Life's obligations, and, just as in the equitable estoppel context, a question remains as to whether Aurora can be held responsible for the failure. It will, therefore, leave this issue open for further briefing and allow Aurora to renew its summary judgment motion on the issue, subject to the briefing schedule described below.

2.5    Negligence Claim

At the motion to dismiss stage, the Court declined to apply the economic loss doctrine to bar M. Schuetta's negligence claim. (Docket #22 at 9–12). It did, however, acknowledge the difficulty of the question and invite Aurora to brief the issue further, if it so chose. (Docket #22 at 11–12).

Aurora took the Court up on its offer, and has offered a convincing rationale for application of the economic loss doctrine to bar Mr. Schuetta's negligence claim. Of course, as the Court has acknowledged, the economic loss doctrine has only expanded in its application in Wisconsin since being introduced in 1989 in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989). At the time, it covered only contracts for products, but has since been expanded broadly outside of that context. *See, e.g.*, *Raytheon Co. v. McGraw-Edison Co.*, 979 F. Supp. 858 (E.D. Wis. 1997); *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1300 (7th Cir. 1991). Moreover, Aurora has presented the Court with case law establishing that the economic loss doctrine has been applied to annuity contracts in other jurisdictions. (Def.'s Br. in Supp., 34 (citing, among others, *Sweet v. Transamerica Life Ins. Co.*, No. 10-CV-01383, 2012 WL 3779051 (D. Nev. Aug. 30, 2012); *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655 (6th Cir. 2005); *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346 (S.D. Fla. 2005))). Finally, in *Wigod v. Wells Fargo Bank, N.A.*, the Seventh Circuit applied Illinois law and found that courts should look to whether the duty in question arose solely from the operation of a contract; if so, then the economic loss doctrine should apply. 673 F.3d 547, 567–68 (7th Cir. 2012).

Applying those principles here, the Court finds that it must apply the economic loss doctrine, so as to bar Mr. Schuetta's negligence claim. As

already discussed, Wisconsin generally applies the doctrine broadly, and other jurisdictions have applied it in the annuity contract context. Moreover, any duties owed by Aurora to Mr. Schuetta arose solely because of their contract.

Accordingly, the Court is obliged to find that the economic loss doctrine applies. Therefore, it will grant Aurora's motion for summary judgment and dismiss Mr. Schuetta's negligence claim.

3.      CONCLUSION

For the reasons set forth above, the Court is obliged to dismiss Mr. Schuetta's breach of contract and negligence claims. It will grant Aurora's motion for summary judgment in that regard.

However, it must deny Aurora's motion insofar as the motion seeks dismissal of Mr. Schuetta's equitable estoppel and breach of implied duty claims. Those claims shall remain to the extent that either of them stems from the 1990 failure to respond to Mr. Schuetta's letter or 1994 failure to alert Mr. Schuetta to his annuity and obligation to file a benefit election. On the other hand, insofar as Mr. Schuetta based those claims on his 1990 telephone conversation, the Court must grant summary judgment in Aurora's favor and dismiss those claims.

Additionally, as discussed more fully above, the Court's denial of Aurora's motion for summary judgment on the equitable estoppel and breach of implied duty claims shall be without prejudice. Aurora may wish to brief those matters further. If so, it must file a brief asserting its arguments in that regard within ten (10) days; Mr. Schuetta shall then have ten (10) days to respond and Aurora five (5) days to reply. No brief should exceed ten pages.

Accordingly,

IT IS ORDERED that, as more fully discussed above and consistent with the Court's discussion on the matter, the defendant's motion for summary judgment (Docket #33) be and the same is hereby GRANTED in part and DENIED in part.

Dated at Milwaukee, Wisconsin, this 8th day of May, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge