# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEO R. SCHUETTA,

                Plaintiff,

v.

AURORA NATIONAL LIFE ASSURANCE COMPANY,

                Defendant.

Case No. 13-CV-1007-JPS

ORDER

On May 8, 2014, the Court issued an order granting in part and denying in part the defendant's motion for summary judgment. (Docket #44). However, the Court denied summary judgment with respect to only two issues and allowed the defendant, Aurora National Life Assurance Company ("Aurora"), to further brief those issues. (Docket #44 at 22). The defendant took the Court up on its offer, and filed a brief arguing that it should be granted summary judgment on those two remaining claims. (Docket #45). The plaintiff, Leo Schuetta ("Schuetta"), responded, arguing that the Court should deny summary judgment and hold a trial on the remaining matters. (Docket #47). The defendant filed a reply brief (Docket #49).

This matter now having been fully briefed, the Court turns to decide it. Because the Court amply set out the background facts in its prior summary judgment order, the Court will not delve into them again, here. Rather, the Court will address only the legal merits of the parties' arguments.

1.      EQUITABLE ESTOPPEL

The Court left open the issue of summary judgment on Mr. Schuetta's equitable estoppel claim because the parties had not adequately addressed whether the doctrine of equitable estoppel may be used as a claim. (Docket #44 at 17). It is clear from Wisconsin case law that equitable estoppel may be

used as a *defense*—a "shield" as the Court and parties are referring to it; less clear to the Court was whether Wisconsin recognizes equitable estoppel as a *claim*—a "sword." *See, e.g.*, *Mohamed v. Reinhart Boerner Van Deuren, S.C.*, No. 10-CV-753, 2012 WL 1491860, *3 (E.D. Wis. Apr. 26, 2012) (citing *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997); *Hocking v. City of Dodgeville*, 326 Wis.2d 155, 174 n.10, 785 N.W.2d 398 (2010); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 456, 463 (7th Cir. 2010)).

In response to the Court's invitation for further briefing, Aurora submitted several cases that clearly establish that Wisconsin does not recognize an equitable estoppel claim. Most importantly, in *Utschig v. McClone*, referring to equitable estoppel as "estoppel *in pais*," the Wisconsin Supreme Court noted that: "'The effect of an estoppel *in pais* is to prevent the assertion of what would otherwise be an unequivocal right…Such an estoppel operates always as a shield, never as a sword.…and it does not of itself create a new right.'" 16 Wis. 2d 506, 509, 114 N.W.2d 854, 855–56 (1962) (quoting 19 Am. Jur., Estoppel, sec. 40, p. 639; citing 31 C.J.S. Estoppel §§ 59, 62)). The Wisconsin Supreme Court reaffirmed that position in *Hoffman v. Red Owl Stores, Inc.*, pointing out that the traditional concept of estoppel "merely serves as a shield and cannot serve as a sword to create a cause of action," and distinguishing promissory estoppel, which is a cause of action—but is not at issue, here. 26 Wis. 2d 683, 696, 133 N.W.2d 267, 274 (1965) (citing *Utschig*, 114 N.W.2d at 855–56); *see also Murray v. City of Milwaukee*, 2002 WI App 62, ¶ 15 & n. 10, 252 Wis. 2d 613, 642 N.W.2d 541. The Wisconsin Court of Appeals reiterated that point in *Murray*:

> In his brief, Murray describes his claim of equitable estoppel as "an equitable cause of action based upon his reliance on the City's historic practices." However, equitable estoppel (estoppel *in pais*) is a bar to the assertion of what would

> otherwise be a right; it does not of itself create a right. Thus, Murray must establish his right to recover attorney fees from the City on some basis other than equitable estoppel; equitable estoppel does not establish that right.

*Murray*, 2002 WI App 62, ¶ 15 & nn. 9–10 (citing *Utschig*, 114 N.W.2d at 855–56; internal and other citations omitted). The Wisconsin Court of Appeals and judges in the Eastern District of Wisconsin have agreed. *See, e.g.*, *Baures v. North Shore Fire Dept.*, 2003 WI App 103, ¶ 30 & n.7, 264 Wis. 2d 815, 664 N.W.2d 113 (citing various cases that discuss the distinction between equitable and promissory estoppel and noting that equitable estoppel functions as a shield); *Third Educ. Grp., Inc. v. Phelps*, No. 07-C-1094, 2009 WL 2150686, at *10–*11 (E.D. Wis. May 15, 2009) (noting that equitable estoppel generally is not treated as a claim, but addressing the claim anyway, because it would still fail); *Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843, at *4 (E.D. Wis. Mar. 13, 2013) (noting that equitable estoppel "is an affirmative defense").

To be sure, the legal issue has suffered over the years from a lack of clarity. *See, e.g.*, *Mohamed*, 2012 WL 1491860, at *3 (citing *Milas*, 571 N.W.2d at 660, (1997); *Hocking*, 785 N.W.2d at 407 & n.10; *Kenseth*, 610 F.3d at 456, 463). *Mohamed* perhaps best exemplifies the confusion, as it relies on two cases[1] that implied the existence of an equitable estoppel claim (but then did not analyze the issue in great depth) and does so while also noting the limitation of its holding: "at this juncture of the proceedings, [the defendant] has not established that equitable estoppel is only an affirmative defense." 2012 WL 1491860, at *3. In *Hocking*, the Wisconsin Supreme Court mentioned that the plaintiffs "argue[d] that they satisfy the requirements of an equitable

---

[1] *Mohamed* relied on *Milas* only to set out the elements of equitable estoppel.

estoppel claim," but then noted the confusing nature of that argument and pointed out that the plaintiff "assert[ed] that they [were] not claiming equitable estoppel." 785 N.W.2d at 407 & n. 10. In other words, the Wisconsin Supreme Court did not clearly recognize an equitable estoppel claim, merely mentioned it in passing in describing the plaintiffs' argument. In *Kenseth*, the Seventh Circuit assumed that an equitable estoppel claim existed, but did so cursorily on its way to affirming the dismissal of such a claim and without citing any Wisconsin case law on the topic.

However, despite the confusion, the Wisconsin Supreme Court's holding in *Utschig* has never been questioned and, in fact, still stands as a crisp and clear statement of the law: equitable estoppel (or estoppel *in pais*) serves only as a defense or "shield," and never as a claim or "sword." *See, e.g.*, *Utschig*, 114 N.W.2d at 855–56; *Red Owl*, 133 N.W.2d at 274; *Murray*, 2002 WI App 62, ¶ 15 & nn. 9–10. Meanwhile, Mr. Schuetta's citations to the contrary are either wholly inapposite or not binding upon this Court. The Court, therefore, will apply *Utschig*'s holding, and dismiss Mr. Schuetta's equitable estoppel claim, as the Court finds that Wisconsin does not recognize such a claim.

2. BREACH OF IMPLIED DUTY OF GOOD FAITH

On the breach of implied duty claim, Aurora points out that "[u]nder Wisconsin law, a party may not be liable for a breach of the implied duty of good faith where 'a contracting party complains of acts of the other party which are specifically authorized in their agreement.'" (Docket #49 at 3 (quoting *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis.2d 568, 577, 431 N.W.2d 721, 726 (Ct. App. 1988). That is because "it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract." *Id.*

That principle is important, here, because the plain language of the parties' contract clearly contemplated Aurora's ability to say nothing to Mr. Schuetta regarding his obligation to file documentation to start receiving his benefits. Specifically, the contract states that: "The Company will not be responsible for any failure of the Deferred Participant to submit such documentation in a timely manner." (PPFF ¶ 13). In other words, under the contract, Aurora was authorized to say nothing; certainly it had no obligation to alert Mr. Schuetta to his failure to file the required documents or to pay him in the absence of those documents. Rather, Mr. Schuetta had an affirmative obligation to file those documents in order to receive his annuity payments; he failed to do so, and the parties' contract contemplated that benefits would not be paid until he rectified that failure. Accordingly, Aurora's mere failure to alert him to his obligation to turn in those documents cannot be a breach of the implied duty of good faith, because Aurora's action was explicitly contemplated and authorized by the parties' agreement. *E.g. Super Valu Stores*, 431 N.W.2d at 726.

Mr. Schuetta argues that this finding would allow Aurora to engage in all sorts of devious behavior—to deliberately withhold information when he contacted them; to lie to him to induce his failure to submit the required documents—but that is a different issue. Whereas the contract explicitly allows for Aurora to do nothing until Mr. Schuetta filed the required paperwork, it certainly does not authorize Aurora to take such deliberately misleading actions or otherwise act in bad faith. In other words, that situation would fall outside of *Super Value Stores*' holding, which otherwise applies to Aurora's failure to notify Mr. Schuetta of the missing paperwork

Thus, if Mr. Schuetta could demonstrate that sort of deliberate action or bad faith on Aurora's part, then he would be entitled to judgment; the

problem is that he has no evidence to support such a finding. To be sure, at this summary judgment stage of the proceedings, the Court must view the record in the light most favorable to Mr. Schuetta and draw all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court cannot weigh the evidence or decide which party's submissions and testimony are more believable. *Id.* Nonetheless, as the non-movant, Mr. Schuetta *was* required to supply his own evidence that would demonstrate a material issue of fact for a trial. *In re Pansier*, 451 F. App'x 593, 596 (7th Cir. 2011) (citing Fed. R. Civ. P. 56; *Anderson*, 477 U.S. at 250; *Serednyj v. Beverly Healthcare LLC*, 656 F.3d 540, 547 (7th Cir.2011)). A genuine issue of material fact exists only "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and the nonmoving party "may not rest on mere allegations or denials in its pleadings" to establish such an issue but instead "'must set forth specific facts.'" *Serednyj*, 656 F.3d at 547 (citing *Anderson*, 477 U.S. at 248, 250).

At this juncture, Mr. Schuetta has not submitted any evidence that would establish bad faith or even create an inference thereof. He points to only three separate occasions on which Aurora could have somehow misled him: in a 1990 telephone call; in failing to respond to his 1990 letter; and, in failing to notify him of his obligations after he signed a 1994 agreement to participate in Aurora's predecessor's rehabilitation plan. To begin, none of Mr. Schuetta's actions created a duty for Aurora to take any specific action. As the Court previously noted, Mr. Schuetta has no recollection of the contents of his 1990 telephone call and, therefore, could very well have been instructed to file the required documents and merely forgotten to do so. Certainly, he has not presented any evidence that could possibly establish that Aurora misled Mr. Schuetta or somehow acted in bad faith during that

conversation. As to the 1990 letter and 1994 agreement, neither created a duty for Aurora to act and Aurora's failure to respond would not constitute misleading or bad faith activity. If anything, the 1990 letter would have served only to confuse a recipient; perhaps, it would have prompted a follow-up call, but by no means would the failure to respond to such a confusing letter—specifically after a representative had recently spoken to Mr. Schuetta—constitute bad faith or otherwise misleading action. The 1994 agreement was an election to participate in a rehabilitation plan. Mr. Schuetta has not established that it was sent only to already-retired individuals; instead, it may have been sent to any person with an annuity contract, whether retired or not. In any case, Mr. Schuetta's return of the agreement would not necessarily have prompted Aurora to look into Mr. Schuetta's account further.

In sum, Mr. Schuetta's argument appears to boil down to the following: on a few occasions, Aurora had the opportunity to check into Mr. Schuetta's account, realize he was retired, realize he had not submitted the required documentation, and then should have requested that documentation from him. But under the contract, Aurora was authorized to wait until Mr. Schuetta's submission of the required documents before paying him benefits. It had no obligation to keep track of his submission or non-submission of those documents. Thus, Aurora could not have violated an implied duty of good faith and fair dealing by simply failing to alert Mr. Schuetta to his obligation to file the required forms. *E.g. Super Valu Stores*, 431 N.W.2d at 726. Perhaps, pursuant to an implied duty of good faith and fair dealing—implied into the contract, because the contract does not authorize such activity, Aurora could not mislead Mr. Schuetta or take other bad faith action. But the evidence simply does not include any evidence of such

activity nor does it even create an inference of bad faith. To be sure, whether there has been a breach of an implied duty is generally a question for the jury. *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169 (citing *Wisconsin Natural Gas Co. v. Gabe's Constr. Co.*, 220 Wis.2d 14, 24 n. 6, 582 N.W.2d 118 (Ct.App. 1998)). But, here, where Mr. Schuetta's proffered evidence on the point is so lacking, even if the Court submitted the question to the jury and the jury found a breach, the Court would ultimately be required to reach this same conclusion on a motion for judgment notwithstanding the verdict. There simply is no dispute of fact—Aurora accepts all of Mr. Schuetta's contentions—and even drawing every reasonable inference in Mr. Schuetta's favor, the Court cannot possibly find that Aurora took any misleading action or engaged in any activity in bad faith. Therefore, the Court must dismiss this claim.[2]

3. LIABILITY FOR ACTIONS OF PREDECESSOR

Finally, even if the Court's dismissal of the two remaining claims for the reasons discussed above were in error, the Court would still be obliged to dismiss the claims. The entirety of the above discussion ignores the fact that Aurora did not, itself, take any of the actions that Mr. Schuetta now complains of. In fact, it was Aurora's predecessor, Executive Life Insurance Company ("Executive Life"), that took *every* action that could possibly be treated as misleading Mr. Schuetta or invoking his reliance. As Aurora correctly points out, Mr. Schuetta does not even dispute that the 1990 to 1994 conduct that could give rise to the equitable estoppel and breach of implied

---

[2]The Court notes that this action may seem contrary to its conclusions in its prior order (Docket #44 at 19–20), but this conclusion rests heavily on the clarified state of the law, which shows that Aurora's mere failure to alert Mr. Schuetta to his obligation to file documents is not a breach of an implied duty of good faith and fair dealing, a point that was not fully addressed in prior briefing.

duty claims occurred entirely during the "period prior to the Effective Date" of Aurora's Reinsurance and Assumption Agreement with Executive Life.

Aurora not being the party at fault, there is only one question: whether Aurora agreed to assume Executive Life's liabilities, such that Aurora could be held liable for Executive Life's activities (which, as the Court already discussed, it does not find would actually form the basis for liability). Aurora's and Executive Life's Reinsurance and Assumption Agreement explicitly made clear that Aurora did not assume Executive Life's liability "for any claim seeking the recovery of Extra-Contractual Damages…occurring in or otherwise relating to the period prior to the Effective Date," of the contract. (Docket #46, Ex. 1, at 2). The Reinsurance and Assumption agreement defines "Extra-Contractual Damages" as "those amounts awarded in excess of benefits due under the Contracts…." (Docket #46, Ex. 1, at 2). The Court previously determined that Mr. Schuetta's breach of contract claim failed and that the totality of benefits due under the contract were paid to Mr. Schuetta by check; therefore, any amount it awarded to him for a breach of implied duty or equitable estoppel claim would be in excess of the benefits due under his annuity contract. Accordingly, the Reinsurance and Assumption Agreement makes clear that Executive Life retained responsibility for those claims. Moreover, even if that were not clear, Aurora did not obtain Executive Life's stock and there is no evidence that Aurora was aware of Mr. Schuetta's claims, such that principles of successor liability could dictate that Aurora took accepted liability for those claims, as Mr. Schuetta argues.

For all of these reasons, Aurora is not the proper party against whom the two remaining claims could possibly lie. Therefore, the Court would be obliged to dismiss those claims, even if it had not already determined that dismissal was required for the other reasons described above.

4. CONCLUSION

For all of these reasons, the Court is obliged to grant the defendant's motion for summary judgment on the remaining two claims, to the extent that it had not done so earlier, and to dismiss those claims with prejudice.

Accordingly,

IT IS ORDERED that, the defendant having provided further briefing on its motion for summary judgment (Docket #33) as requested by the Court (Docket #44), the defendant's motion for summary judgment (Docket #44) be and the same is hereby GRANTED in all remaining respects and the plaintiff's equitable estoppel and breach of implied duty claims be and the same are hereby DISMISSED with prejudice; and

IT IS FURTHER ORDERED that, the entirety of plaintiff's claims now having been dismissed with prejudice, this action be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of June, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge